UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CIT BANK, N.A.,

        Plaintiffs,

  -v-                                        No.  14 CV 6793-LTS-OTW

JI YOUN MIN, YOOMI MIN, SUNG JIN
MIN,  WASHINGTON MUTUAL BANK,
F.A., THE  BOARD OF MANAGERS OF
THE 200 CHAMBERS STREET
CONDOMINIUM, NEW  YORK CITY
ENVIRONMENTAL CONTROL  BOARD,
NEW YORK CITY TRANSIT
ADJUDICATION BUREAU, QUEENS
LUMBER CO., INC., and NEW YORK CITY
PARKING VIOLATIONS BUREAU,

        Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiff CIT Bank, N.A. ("CIT" or "Plaintiff"), formerly known as OneWest Bank, N.A., moves for summary judgment against Ji Youn Min ("Min"), and for a default judgment against Yoomi Min, Sung Jin Min, Queens Lumber Co., Inc., Washington Mutual Bank, F.A., the Board of Managers of the 200 Chambers Street Condominium (the "Board of Managers"), the New York City Environmental Control Board, the New York City Transit Adjudication Bureau, and the New York City Parking Violations Bureau (collectively, the "Defaulting Defendants" and, cumulatively with Min, "Defendants").  Plaintiff seeks a judgment of foreclosure and sale of the property located at 200 Chambers Street, Unit 3-M, New York, New York (the "Property") pursuant to Article 13 of the New York Real Property Actions and Proceedings Law ("NY RPAPL").  Min challenges Plaintiff's standing to bring suit, arguing that

Plaintiff has not demonstrated that it held the mortgage note, either through written assignment or by taking physical delivery, prior to filing its complaint, and contends that Plaintiff did not provide the requisite notice prior to commencing the foreclosure proceeding.

The Court has jurisdiction of the action pursuant to 28 U.S.C. section 1332.

The Court has reviewed the submissions of the parties carefully, and for the following reasons, grants in part Plaintiff's motion for summary judgment against Min. The Court denies without prejudice Plaintiff's motion for default judgment as against the Defaulting Defendants.

## BACKGROUND[1]

On March 9, 2007, Min executed and delivered to Just Mortgage, Inc. ("JMI"), and its successors and assigns a promissory note (the "Note") evidencing a loan made to Min in the principal amount of $560,000 plus interest. (Def. 56.1 St. ¶ 11.) On the same day, Min executed and delivered a mortgage against the Property (the "Mortgage") to JMI's nominee, Mortgage Electronic Registration Systems, Inc. ("MERS"), to secure payment as set forth in the Note. (Id.) The Note was then indorsed by JMI to IndyMac Bank ("IndyMac") by an allonge attached to the Note. (Id. ¶ 12.) On August 7, 2007, the Mortgage was recorded in the Office of the City Register of the City of New York as CRFN 200700406683. (Mortgage, Docket Entry No. 118-1.) The Mortgage contains a provision entitling the lender to costs and attorneys' fees incurred following a successful foreclosure. (Mortgage ¶ 22.) The Mortgage also contains a

---

[1] The facts recited herein are undisputed unless otherwise indicated. Facts recited as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there is no non-conclusory contrary factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

covenant permitting the lender to recover, with interest, costs incurred to remedy, inter alia, any breach of the borrower's obligations under the Mortgage. (Mortgage ¶ 9.)

On July 11, 2008, the Office of Thrift Supervision closed IndyMac and appointed the Federal Deposit Insurance Corporation ("FDIC") as IndyMac's receiver. (Def. 56.1 St. ¶ 14.) IndyMac's assets were then transferred to IndyMac Federal Bank, FSB ("IndyMac Federal"). (Id.) The FDIC was then appointed conservator and, later, receiver of IndyMac Federal. (Id.)

On October 1, 2008, Min, then and still residing at 1600 Broadway, Apt. 8C, New York, New York, defaulted on her obligations to remit payment under the Note and Mortgage. (Id. ¶¶ 18-19.) Min thereafter failed to make any of her required monthly payments. (Id. ¶¶ 18, 22.)

On March 18, 2009, Plaintiff, then known as OneWest Bank, FSB ("OneWest"), and IndyMac Federal executed a Master Purchase Agreement by which OneWest acquired substantially all of IndyMac Federal's assets. (Donivan Hodge Aff., Docket Entry No. 118, ¶ 10.) Pursuant to this transaction, Plaintiff and IndyMac Federal entered into a Loan Sale Agreement on March 19, 2009, under which Plaintiff acquired certain mortgage loans then held by IndyMac Federal. (Id. ¶¶ 11-12.) Attachment A to the Loan Sale Agreement listed the particular loans to be transferred, including the instant loan in favor of Min. (Hodge Aff. ¶ 12; Loan Sale Agreement, Docket Entry No. 118-4; Attachment A, Docket Entry No. 124-1.) Although Attachment A is not attached to the Loan Sale Agreement filed in support of this motion on ECF (Docket Entry No. 118-4), a partially redacted version was provided to the Court with the courtesy copy of the Loan Sale Agreement (Hodge Aff., Ex. D) and was publicly filed as an exhibit to Plaintiff's reply brief along with an affidavit from Plaintiff's attorney stating that

Attachment A was served on Min on March 27, 2017, in response to Min's first set of document requests (Docket Entry No. 124-1).

The Note includes two allonges with undated indorsements. (Note, Docket Entry No. 118-13, Bates Nos. CIT0010-CIT0011.) The first allonge ("First Allonge") is indorsed by the FDIC, as receiver to IndyMac Federal, to OneWest without recourse. (Id. at Bates No. CIT0010.) The First Allonge was signed by Sandra Schneider, Plaintiff's Vice President, as Attorney-in-Fact for the FDIC, pursuant to a limited power of attorney. (Id.; see Limited Power of Attorney, Docket Entry No. 118-6.) The second allonge (the "Second Allonge") was indorsed in blank by Schneider as Vice President of Plaintiff. (Note, Bates No. CIT0011.) Although the original Note has not been provided to the Court, Donivan Hodge, Plaintiff's Assistant Secretary, states in his sworn affidavit that the allonges were "affixed" to the Note. (Hodge Aff. ¶ 14.)

Hodge states that the information set forth in his affidavit was gleaned from a review of Plaintiff's business records and his personal knowledge of the "operation of and the circumstances surrounding the preparation, maintenance, distribution, and retrieval of records in [Plaintiff's] record keeping systems." (Hodge Aff. ¶ 3.) He further states that Plaintiff's business practice is to create such records in the ordinary course of business soon after the information contained in the records becomes known by Plaintiff's employees, and that records created by prior owners or servicers of a loan are incorporated into Plaintiff's record-keeping system. (Id.)

In his affidavit, Hodge states that Plaintiff "obtained possession of the Note," including the aforementioned allonges, "prior to August 22, 2014," the day the Complaint was filed. (Hodge. Aff. ¶¶ 25-26; Compl. Docket Entry No. 1.)

Hodge affirms, based on his familiarity with Plaintiff's "practice for printing and mailing notices" and a review of Plaintiff's records, that Plaintiff sent four 90-day notices of default, as required by NY RPAPL section 1304, dated April 16, 2014, to Min at both the Property and her 1600 Broadway, New York, New York address, by both certified and first-class mail. (Hodge Aff. ¶¶ 19-22.) Hodge explains that Plaintiff's practice is to prepare and mail 90-day notices to defaulting borrowers and, within two days, place a copy of each notice in the file for the corresponding loan. (Id. ¶ 21.) Hodge avers, based on his review of the records, that the aforementioned process was followed here. (Id.)

Plaintiff proffers copies of these notices, which include mailing labels containing bar-coded tracking numbers that correspond to the tracking numbers on a PS Form 3877 stamped by the United States Postal Service and a TrackRight transaction report, which lists each notice as having been mailed on either April 17 or 18, 2014. (Docket Entry Nos. 118-8, 118-9, 118-10.) Min states that she does not possess any of the 90-day notices and does not recall ever having received one. (Min Cert., Docket Entry No. 74, ¶ 2.)

Following the 2014 purchase of its parent company by CIT Group Inc., OneWest was renamed CIT Bank, N.A. (Def. 56.1 St. ¶ 16.)

DISCUSSION

Motion for Summary Judgment

The pending motion is brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Under Rule 56(a), summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a material issue of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986), and the court

must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F. 2d 1455, 1461 (2d Cir. 1993)) (internal quotation marks omitted).  A fact is considered material "if it might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).  "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

  "To establish a prima facie case of foreclosure in New York, a plaintiff must show (1) a mortgage; (2) an unpaid note; and (3) proof of default." 1077 Madison St. LLC v. Smith, 670 Fed. App'x 745, 746 (2d Cir. 2018).  The requirement that a plaintiff hold the note prior to the commencement of a foreclosure action constitutes an element of standing and, when a question is raised, must be proven by the plaintiff.  Aurora Loan Servs. LLC v. Taylor, 25 N.Y.3d 355, 361 (2015); see also GRP Loan, LLC v. Taylor, 945 N.Y.S.2d 336, 338 (App. Div. 2012) ("Where the issue of standing is raised by a defendant, a plaintiff must prove its standing in order to be entitled to relief.").  If a promissory note is "tendered to and accepted by an assignee, the mortgage passes as an incident to the note," but a transfer of the mortgage without the note is a "nullity" because a mortgage is "merely security for a debt . . . and cannot exist independently." Bank of New York v. Silverberg, 926 N.Y.S.2d 532, 537 (App. Div. 2011) (internal quotation marks and citations omitted).  Therefore, establishing that the mortgage was assigned to a plaintiff is not sufficient to support an inference that the plaintiff also held the

underlying note.  See Aurora Loan Servs., 25 N.Y.3d at 361 (explaining that the dispositive document to confer standing is the note, not the mortgage); see also Wells Fargo Bank, NA v. Burke, 5 N.Y.S.3d 107, 109 (App. Div. 2015) (finding that the timing of an assignment of a mortgage was irrelevant to the determination of when a corresponding note was assigned.).

Transfer of a note may be effectuated by "[e]ither a written assignment . . . or the physical delivery of the note."  U.S. Bank, N.A. v. Collymore, 890 N.Y.S.2d 578, 580 (App. Div. 2009).  Physical delivery is "established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsment in blank or bears a special indorsment payable to the order of the plaintiff."  Eastern Sav. Bank, FSB v. Thompson, 631 Fed. App'x 13, 15 (2d Cir. 2015) (quoting Wells Fargo Bank, NA v. Ostiguy, 8 N.Y.S.3d 669, 671 (App. Div. 2015)) (internal quotation marks omitted).  Such an allonge must be "so firmly affixed to the note as to become a part thereof."  HSBC Bank USA, N.A. v. Thomas, 999 N.Y.S.2d 671, 674 (N.Y. Sup. Ct. 2014) (citing UCC § 3-202(2)).

The Second Circuit has found that the written assignment of a note requires no special form and that the particular form of Loan Sale Agreement which was used to transfer substantially all of IndyMac Federal's assets to Plaintiff was sufficient to convey standing to foreclose.  OneWest Bank, N.A. v. Melina, 827 F.3d 214, 223 (2d Cir. 2016).  Here, the Loan Sale Agreement was executed prior to the commencement of this action.

Min challenges the validity of the sale, which gave rise to the transfer of the Note by allonge, arguing that Plaintiff provided no evidence that her loan was included in the Loan Sale Agreement because Attachment A, which lists the individual loans being transferred, was not produced, and because Plaintiff may not have complied with the terms of the Loan Sale Agreement.  Because Attachment A, although difficult to read, clearly refers to the Property's

address, was provided to the Court in hard copy with Plaintiff's moving papers, and was publicly filed on ECF with Plaintiff's reply, Min's argument is without merit. See Onewest Bank, N.A. v. Perez, No. 14 CV 3465 (ADS) (SIL), 2015 WL 12659924, at *9 (E.D.N.Y. July 18, 2015) (finding that Attachment A of the same Loan Sale Agreement included the subject property based on the partial information legible in the document and the sworn affidavit of Plaintiff's officer). Furthermore, Hodge's sworn statement also indicates that Min's loan was transferred pursuant to the Loan Sale Agreement. See id.; (Hodge Aff. ¶ 12).

Min's assertion that the conveyance of the Note is invalid because Plaintiff failed to comply with certain terms of the Loan Sale Agreement is ineffective to undermine Plaintiff's standing to foreclose because Min was neither a party to that agreement nor an intended beneficiary of it. See Perez, 2015 WL 12659924 at *7, 9 (citing Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 81 (2d Cir. 2014)) (finding that the defendants could not assert noncompliance with the Loan Sale Agreement to challenge Plaintiff's standing to foreclose).

Accordingly, Plaintiff has standing to bring this foreclosure action and, based on her concession, Min defaulted on the loan. The Court thus finds that Plaintiff has established its prima facie case. The Court now turns to Min's defense that Plaintiff failed to provide the 90-day notice required by NY RPAPL section 1304 ("Section 1304").

Section 1304(1) prescribes the contents of the notice that a mortgagee or loan servicer must send to a borrower defaulting on a home loan at least 90 days prior to commencing legal action. Such notice must be sent to both the property encumbered by the mortgage and any other address of record. NY RPAPL § 1304(1).

In New York, the mailing of a 90-day notice is presumed if the mortgagee or loan servicer provides a sworn statement that the notice was "mailed by a particular person, or that a particular process, which resulted in mailing, was uniformly and diligently followed." Wells Fargo Bank, N.A. v. Ullah, No. 13 CV 485 (JPO), 2015 WL 3735230, at *9 (S.D.N.Y. June 15, 2015) (citation and quotation marks omitted).  Such a sworn statement may be coupled with supporting documentary evidence to trigger the presumption.  Here, Hodge's affidavit explains that Plaintiff's practice is to generate and mail the required notices and then file them within short order, and that, according to his review of Plaintiff's files, that practice was adhered to here.  This assertion is buttressed by ample supporting evidence.  Plaintiff proffers copies of the notices containing mailing labels addressed both to the Property and to Min's residence reflecting tracking numbers that correspond to entries on the Postal Service form and a transaction report[2] indicating that each notice was sent on April 17 or 18, 2014.  See OneWest Bank, N.A. v. Guerrero, No. 14 CV 3754 (NSR), 2018 WL 2727891, at *8 (S.D.N.Y. June 6, 2018) (finding a presumption of mailing based on a similar review of business records, familiarity with a similar corporate mailing practice, and a similar transaction report).  Min's

---

[2]   Min argues that Hodge failed to adequately explain who prepared the transaction report and how and when it was created.  The transaction report is properly admitted as a business record, as Hodge's affidavit makes clear that the records he relied upon were "kept in the course of regularly conducted business activity and also that it was the regular practice of that business activity to make the record." U.S. v. Komasa, 767 F.3d 151, 156 (2d Cir. (2014) (internal quotation marks, citations, and alterations omitted).  Specifically, Hodge has stated that he has acquired knowledge of Plaintiff's records preparation and management practices through his current job at CIT and that all records relied on in drafting his affidavit were regularly kept in the course of Plaintiff's business and were regularly updated by staff when or shortly after staff acquired the knowledge of the information to be memorialized in such records.

self-serving denial of receipt is, alone, insufficient to create a genuine issue of material fact.[3] Id. at *8.  Plaintiff is therefore entitled as a matter of law to foreclose on the Property.

Plaintiff also requests attorneys' fees, interest, and costs consistent with the terms of the Mortgage.  Under New York law, courts will enforce mortgage provisions, like those of any other contract, that clearly entitle a prevailing party to reasonable attorneys' fees.  See Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs., LLC, No. 16 CV 9112 (LGS), 2018 WL 4373996, at *8 (S.D.N.Y. Sept. 12, 2018) (citing NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008)).  Here, paragraph 22 of the Mortgage clearly provides for the award of attorneys' fees and costs to the mortgagee upon a successful foreclosure action.  Likewise, paragraph 9 permits the lender to recover costs, including interest, to enforce the covenants set forth in the mortgage.  Accordingly, Plaintiff is entitled to attorneys' fees, interest, and costs, and Plaintiff may make a motion in accordance with Federal Rule of Civil Procedure 54(d), supported by sufficient evidence, for the award of such fees.

Default Judgment

Plaintiff also moves for default judgment against the Defaulting Defendants.  The Clerk of Court issued Certificates of Default against all Defendants except the Board of Managers.  (Docket Entry Nos. 33, 34, 36, 37, 38, 39, 42, and 43.)  Plaintiff produced affidavits of service for its first motion for default judgment (Docket Entry Nos. 57 and 62).  That motion was resolved by vacatur of Min's default and the denial of default judgments against the remaining Defaulting Defendants without prejudice as premature.  CIT Bank, N.A. v. Ji Youn

---

[3]    Based on the Court's finding that the 90-day notices were timely mailed, the Court declines to address Plaintiff's argument that such notices were not required because the Property was not Min's residence at any relevant time.

Min, 14 CV 6793 (LTS), 2016 U.S. Dist. LEXIS 102694 (S.D.N.Y. Aug. 3, 2016).  Plaintiff has not, however, provided proof that it served its current motion for summary judgment and renewed motion for default judgment on the Defaulting Defendants.[4]  Plaintiff's motion for default judgment is therefore denied without prejudice to renewal.  The Court will enter a separate order directing Plaintiff to renew its motion for default judgment in compliance with, inter alia, the aforementioned service requirements.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted to the extent that it seeks a determination that Plaintiff is entitled to foreclose on Min's interest in the Property.  It is denied without prejudice, pending the resolution of the remaining default judgment motion practice, to the extent it seeks a computation of damages and entry of a judgment of foreclosure and sale.   Plaintiff's motion for default judgment is denied without prejudice to renewal in compliance with the Court's separate order to be entered contemporaneously with this Memorandum Opinion and Order.

---

[4] The defendant Board of Managers filed a notice of appearance on October 8, 2014, waiving service of papers other than notice of foreclosure judgment and sale, and reserving its lien rights.  (Docket Entry No. 19.)  It has not answered or otherwise responded to the Complaint.

The Clerk of Court is requested to update the docket to reflect that this case is not stayed in its entirety.  Only certain requirements related to final pre-trial conference preparation have been stayed.  (See Docket Entry No. 125.)

Docket Entry No. 115 is resolved.

SO ORDERED.

Dated: New York, New York
May 8, 2019

                                                   /s/ Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  United States District Judge

Case 1:14-cv-06793-LTS-OTW   Document 132   Filed 05/08/19   Page 12 of 12